JUDGE BAUGH,
District Judge, concurring in part and dissenting in part.
¶145 I dissent from the majority’s analysis and decision as to that part of Issue 5 dealing with Social Security survivor benefits, and I dissent from the majority’s analysis and decision as to that part of Issue 6 pertaining to prejudgment interest on the jury’s award of medical and funeral expenses. I concur with the Court’s decision and analysis as to all other Issues.
¶146 As to Issue 5, the majority concludes that Social Security death benefits are not a collateral source. Collateral sources are defined at § *319 27-1-307(1), MCA. It is an all-inclusive definition. Anything can be a collateral source.
¶147 The subparts to § 27-1-307(1), MCA, follow a colon that ends part (1) which means that the following subparts are examples, explanations and illustrations. (Look it up in the back of your dictionary or consult your favorite grammar person.) As a list of examples, explanations and illustrations, the list is not all-inclusive except for “any other source...” in subpart (e). The only substantive part of the subparts are the exceptions.
¶148 The majority says that something that is not in the statute in so many words, to-wit: Social Security death benefits, is, nonetheless, an exception to the broad definition of collateral source defined in part (1). They do this by application of two of the canons of construction: primarily, expressio unius est exclusio alterius (the expression of one thing is the exclusion of another) applied to subpart (a), and secondarily, ejusdem generis, applied to subparts (a-e).
¶149 In general, the canons of construction are not without criticism. See Richard A. Posner, Statutory Interpretation — In the Classroom and in the Courtroom, 50 U.Chi.L.Rev. 800 (1983). Judge Posner argues that many courts put too much emphasis on and otherwise misuse these canons.
¶150 To apply expressio unius est exclusio alterius one must conclude that a complete statement or list would have normally included that which was omitted. Only then does it follow that the omission is arguably significant. Ford v. U.S. (1927), 273 U.S. 593, 611-12, 47 S.Ct. 531, 537, 71 L.Ed. 793.
¶151 Subpart (a) references medical and disability payments as an example of or, as the majority see it, a part of the definition of, collateral source. If one emphasizes the adjective “federal Social Security Act” rather than the predicate of subpart (a), then subpart (a) references federal Social Security Act medical and disability payments. Obviously, the legislature could have expanded subpart (a) to include Social Security death benefits.
¶152 Is Social Security death benefits so closely related to Social Security medical and disability payments that it must necessarily follow that the omission of Social Security death benefits was purposely omitted by the legislature? The majority answer this question in the affirmative. I believe the majority reads too much into the omission and misapplies the canon in question.
*320 ¶153 In subpart (b) is a discussion of insurance that is a collateral source — either an example of collateral source or, as the majority see it, part of the definition of collateral source. Also in subpart (b) an exception is made so that life insurance is excluded as a collateral source.
¶154 If expressio unius est exclusio alterius has application in construing § 27-1-307, MCA, it would seem that this canon might as well apply here at subpart (b) because'Social Security death benefits have as much, or more, in common with life insurance as with medical and disability payments. So, if the canon were applied here, the omission of Social Security death benefits as an exception to the definition of collateral source, one would conclude by application of this canon that Social Security death benefits are a collateral source.
¶155 At best, it is a draw and this canon offers no assistance in interpretation of § 27-1-307, MCA.
¶156 Is ejusdem generis of any more assistance? This canon (of the same kind, class or nature) is an illustration of noscitur a sociis, general and specific words are associated with and take color from each other, restricting general words to a sense analogous to less general words. Black’s Law Dictionary.
¶157 Apparently, the majority or at least some of them, see subparts (a-e) as a list of specific and general phrases, discussion, definitions or whatever and conclude that the general “any other source” part of subpart (e) is limited to the less general or specifics of subparts (a-d). This seems to me a strained application of the maxim or canon of construction. Further, this interpretation effectively eliminates “any other source” from the statute all together.
¶158 The majority may be right in their interpretation. The Legislature may have intended that Social Security death benefits are not to be a collateral source. However, the Legislature did not say that and any amount of construction, rationalization, bending or manipulation will not make it so.
¶159 The object is to make a plaintiff whole for his damages caused by a defendant. On the other hand, it is not the object to make the plaintiff more than whole. The jury in this case determined the amount necessary to make the Plaintiff whole: 1.3 million dollars.
¶ 160 Unlike life insurance (an exception to collateral source) which one purchases with his own money or earns as part of his employment package, Social Security death benefits are part of the fabric of society paid for by all citizens, including the Plaintiff and the Defendant.
*321 ¶161 Since the District Court did not include Social Security death benefits as a collateral source, it erred and so do we by not setting this right at this time. The majority will make Plaintiff some $247,070 more than whole. By not simply applying the foremost canon of judicial construction, to-wit: read the statute, the majority does not apply the law as written by the Legislature and will in this case and countless others, enable some plaintiffs to be made more than whole at the unjust expense of those committing unintended torts. If the statute is to be rewritten to include language that the Legislature left out, then it is the Legislature’s task, not this Court’s to accomplish that.
¶162 As to Issue 6, the majority will also give Plaintiff prejudgment interest on the basis that it is calculable as to at least the $203,000, in medical and funeral expenses awarded by the jury. The Plaintiff made a demand of Defendant for this long before trial.
¶163 However, I believe the record reflects that even before Plaintiff’s demand, the State Fund had paid these things. At some point before trial and after Plaintiff had settled with some other Defendants, Plaintiff was able to settle the State Fund’s subrogation rights for $55,000. Plaintiff certainly cannot be faulted for settling a claim for 25 cents on the dollar and is certainly entitled to the benefit of the bargain.
¶164 Inherent in the concept of interest is that the purpose of interest is to compensate for the use or detention of money. In the case at bar, the medical and funeral expenses were paid by the State Fund. Plaintiff accepted the benefit of those payments and has waived all claims to prejudgment interest. See § 27-1-214, MCA.
¶165 Then, Plaintiff paid the State Fund $55,000 to settle the subrogation claim. All Plaintiff is out, that Plaintiff was entitled to from Defendant prior to trial, was $55,000 from the date Plaintiff settled the subrogation claim. Plaintiff’s prejudgment interest should be based on the $55,000 Plaintiff lost the use of before trial.
¶166 To the extent the majority will allow Plaintiff prejudgment interest on more than the $55,000 for a longer period than from the date Plaintiff paid the $55,000,1 dissent.